UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE LOCAL 7 TILE INDUSTRY WELFARE FUND, THE LOCAL 7 TILE INDUSTRY ANNUITY FUND, THE TILE LAYERS LOCAL UNION 52 PENSION FUND, TRUSTEES OF THE LOCAL 7 MARBLE INDUSTRY PENSION FUND, THE LOCAL 7 MARBLE INDUSTRY ANNUITY FUND, THE LOCAL 7 MARBLE INDUSTRY TRUST FUND, and TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND,<br><br>*Plaintiffs,*<br><br>— against —<br><br>ATLANTIC EXTERIOR WALL SYSTEMS, LLC,<br><br>*Defendant.* | **20-cv-4505 (ARR) (RER)**<br><br><br>**NOT FOR PRINT OR ELECTRONIC PUBLICATION**<br><br><br>**OPINION & ORDER** |

ROSS, United States District Judge:

The plaintiffs in this case are trustees of multiemployer employee benefit funds (collectively, "the funds"). They bring this action against defendant, Atlantic Exterior Wall Systems, LLC ("Atlantic"), seeking overdue fringe benefit payments they allege are owed to the funds on behalf of Atlantic's covered employees. The defendant has moved for partial summary judgment on two issues, claiming that (1) one source of the alleged delinquent contributions—payments labeled "extra pay"— does not correlate with work that obligates the defendant to contribute to the funds under the terms of their agreements, and (2) the statute of limitations prohibits the plaintiffs from collecting any contributions owed for the period prior to September 23, 2014. As to the first issue, plaintiffs have demonstrated that there remain material issues of disputed fact that foreclose summary judgment. As to the second issue, the defendant's argument fails as a matter of law. Thus, the defendant's motion for partial summary judgment is denied.

## BACKGROUND

*Sources of Factual History*

The following facts are taken from the parties' filings, depositions, declarations, exhibits, and respective Local Rule 56.1 statements of facts. *See Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). Citations to a party's 56.1 statement incorporate the evidentiary materials cited therein. Unless otherwise noted, where a party's Rule 56.1 statement is cited, that fact is undisputed or the opposing party has not pointed to any evidence in the record to contradict it. *See* E.D.N.Y. Local Civil Rule 56.1(c), (d).

*Factual and Procedural History*

The plaintiffs are trustees of multiemployer employee benefit funds. These funds are the Local 7 Tile Industry Welfare Fund, Local 7 Tile Industry Annuity Fund, and Tile Layers Local Union 52 Pension Fund (collectively, the "Tile Funds"); the Local 7 Marble Industry Pension Fund, the Local 7 Marble Industry Annuity Fund, the Local 7 Industry Trust Fund (collectively, the "Marble Funds"); and the Bricklayers & Trowel Trades International Pension Fund (the "International Fund"). Def.'s 56.1 ¶¶ 1, 5, 9. These funds benefit members of various divisions of Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers (the "Union"). Def.'s 56.1 ¶¶ 30, 31, 35.

The defendant, Atlantic, is a New Jersey corporation, with its principal place of business in Wayne, New Jersey. Def.'s 56.1 ¶¶ 19, 23. At all relevant times, Atlantic was a contractor specializing in exterior prefabricated stone and brick facades and interior stone and tile work for commercial and residential buildings. Def.'s 56.1 ¶¶ 24, 27; Pl.'s 56.1 Resp. ¶ 24. During the relevant period it employed Union members to perform tile and marble work. Def.'s 56.1 ¶ 45. Collective Bargaining Agreements ("CBAs") governed the terms of agreement between Atlantic and the Union. Def.'s 56.1 ¶ 32, 36. The CBAs required Atlantic to remit specified hourly contributions to the funds for all tile and marble work performed by Atlantic employees in the trade and geographical jurisdictions of the Union

2

("covered employment" or "covered work"). Def.'s 56.1 ¶¶ 37, 43, 44, 55. Under both the CBAs and the funds' policies for collection of those contributions, Atlantic was required to submit weekly reports of hours of covered employment performed by its employees. Def.'s 56.1 ¶ 38. Per the terms of the CBA, if Atlantic failed to remit required contributions by the 15th day of the month following the month in which the work was performed, they were delinquent, entitling the funds to payment of unpaid contributions, interest owed, liquidated damages, audit costs, and attorneys' fees and costs. Def.'s 56.1 ¶¶ 39, 40. Atlantic was also obligated to furnish the funds with their books and records, enabling the funds to verify Atlantic's compliance with its obligations. Def.'s 56.1 ¶ 41.

The funds first requested Atlantic's books and records for the relevant period on December 4, 2017, but failed receive a reply, even after multiple requests. Pl.'s 56.1 Resp. ¶ 111. The funds issued a preliminary estimated audit report of Atlantic's books and records on August 22, 2019, Def.'s 56.1 ¶ 86. Without response from Atlantic, that preliminary report was finalized on September 23, 2020, determining that Atlantic owed the funds $2,474,521.86 for delinquent contributions, interest, liquidated damages, and audit costs. Def.'s 56.1 ¶¶ 87–90. The parties dispute the findings of that audit.

As relevant to this motion for summary judgment, the parties differ in their statements of how employees were compensated and the way their work was categorized in reports to the funds. The defendant contends that union workers were paid the union-dictated hourly rate for all work. Def.'s 56.1 ¶ 46. It also states that employees received a weekly paycheck for the hours of covered work they performed and a second check—identified as "extra pay"—which reimbursed employees for non-covered work and expenses. Def.'s 56.1 ¶¶ 53, 57. Atlantic asserts that the extra pay given to Atlantic's employees included expense reimbursement for bridge and tunnel tolls, paid parking receipts, train tickets, cell phone and expenses incurred at job sites; supplemental pay for supervisors; holiday and performance bonuses; vacation, holiday, and sick pay; and payment for work performed in Atlantic's

facilities. Def.'s 56.1 ¶¶ 57, 58, 62, 63, 64, 65, 66.

Plaintiffs allege, instead, that Atlantic sought to disguise covered employment hours from the funds by classifying payments for those hours as separate reimbursements, thus avoiding the payment of requisite benefit contributions to the funds. Pl.'s 56.1 Resp. ¶ 46. Plaintiffs assert that many of these hours were paid below the minimum wage mandated by the union and involved installing tile at the residences of Atlantic's owners and their relatives, Atlantic's facilities, and Atlantic's commercial construction projects. Pl.'s 56.1 Resp. ¶ 46, 110.

*Procedural History*

The plaintiffs filed their complaint on September 23, 2020, alleging that Atlantic was obligated to make contributions to the funds and failed to do so for the period between January 1, 2014, and December 31, 2016, in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145, and their CBAs, as enforced under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. Compl. 1, ECF No. 1. Defendant answered on November 25, 2020. ECF No. 7. After the completion of discovery, defendant filed this motion for summary judgment on April 15, 2022. ECF No. 31.

## DISCUSSION

### I.     Legal Standard for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court at this juncture is not to resolve disputed issues but rather to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed" and the court must draw "all justifiable

inferences" in favor of the nonmoving party. *Id.* at 255 (citation omitted).

"While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, . . . materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (alteration in original) (internal quotation omitted). "It is the movant's burden to initially demonstrate the absence of material facts that preclude summary judgment." *Carroll v. Krumpter*, 397 F.Supp.3d 234, 243 (E.D.N.Y. 2019) (citing *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005); *see also PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) ("'[T]he burden on the moving party may be discharged by "showing" . . . that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the moving party meets its initial burden, "the burden shifts to the nonmoving party to come forward with 'specific facts showing that there is a genuine issue for trial.'" *PepsiCo*, 315 F.3d at 105 (quoting Fed. R. Civ. P. 56(e)).

## II.    Analysis

Section 515 of ERISA provides that: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Further, Section 301 of the LMRA provides federal jurisdiction for suits involving the "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Defendant acknowledges that it was subject to CBAs with the plaintiff and obliged by the terms of those CBAs to make contributions to funds for covered employment. Def.'s 56.1 ¶¶ 32, 36, 37.

The defendant argues for partial summary judgment on two grounds: (1) one source of the alleged delinquent contributions—payments labeled "extra pay"—do not correlate with work that

obligates the defendant to contribute to the funds under the terms of the CBAs; and (2) the statute of limitations prohibits the plaintiffs from collecting any contributions owed for the period prior to September 23, 2014. I will address each argument in turn.

### A. A Triable Issue of Material Fact Exists as to Whether the Payments Labeled as Extra Pay Compensated Employees for Covered Work

The plaintiffs have claimed that the defendant disguised hours of covered employment under the umbrella of checks for extra pay in order to avoid making required contributions to the funds. The defendant maintains that the secondary checks issued to employees as extra pay were exclusively for expenses and payments that do not constitute covered employment subject to contribution requirements. Atlantic's arguments on the issue of extra pay rely on four forms of evidentiary proof: (1) testimony from Atlantic employees attesting that they received payment for reimbursed expenses and other auxiliary payments that did not require the payment of fringe benefits, Def.'s Mem. in Supp. of Summ. J. 14–15 ("Def.'s Mem."), ECF No. 35; (2) deposition testimony from two Union Trustees stating that to their understanding employers governed by the CBAs, including Atlantic, are not required to pay fringe benefit contributions in conjunction with additional pay and expense reimbursement, *id.* at 14; (3) deposition testimony from foreman Sean Clifton attesting that he performed work in Atlantic's shop that did not require payment of fringe benefits, *id.* at 15; and (4) affidavits from Atlantic's union workers attesting that they are not entitled to and should not have any further benefit contributions paid to the funds for the relevant period, *id.* at 13–14.

In support of its motion, Atlantic points to the deposition testimony of three Atlantic employees—Lawrence DiFalco, Giuseppe Regalbuto, and Joseph Regalbuto. All three testified that Atlantic reimbursed them for expenses incurred on behalf of the company. Def.'s 56.1 ¶¶ 79, 81, 83. DiFalco and Giuseppe Regalbuto further stated that Atlantic was not required to pay fringe benefit contributions in conjunction with those reimbursements. Def.'s 56.1 ¶¶ 80, 82. That testimony, however, does not go to plaintiffs' claim that at least some portion of the funds distributed as extra

pay, including those for reimbursements, in fact compensated employees for covered employment as a means to avoid making payments to the funds. The plaintiffs acknowledge that expense reimbursement does not constitute covered employment under the terms of the CBAs. Pl.'s 56.1 Resp. ¶ 105. The testimony from these employees does not speak to whether *all* payments made as reimbursements correlated to actual expenses, and thus does not aid the defendant in meeting it burden.

The testimony from the two Union Trustees, William Hill and Matthew Guy, similarly goes only to issues the plaintiff does not dispute and not to the heart of the claim. Both Hill and Guy testified that, based on their understanding of the CBAs, employers are not required to pay fringe benefit fund contributions in conjunction with bonus pay, additional foreman pay, and expense reimbursement. Def.'s 56.1 ¶ 73–74, 77. Plaintiffs do not contend otherwise. Pl.'s 56.1 Resp. ¶¶ 74, 105. Rather, as noted above, they allege that Atlantic used these expenses to disguise covered employment. Pl.'s 56.1 Resp. ¶ 48. Neither trustee's testimony on this issue verifies that Atlantic made solely legitimate payments under these categories. The defendants also rely on Hill's testimony that employers are not required provide contributions in conjunction with sick pay, Def.'s Mem. 14; Def.'s 56.1 ¶ 76; Dep. Tr. of William Hill, 75:25–76:6, Decl. of Richard B. Ziskin in Supp. of Summ. J. ("Def.'s Decl."), Ex. BB, ECF No. 33-28, neglecting Guy's testimony attesting to the exact opposite, Dep. Tr. of Matthew Guy, 25:19–26:7, Def.'s Decl., Ex. CC, ECF No. 33-29. But again, this conflicting testimony goes to the terms of the CBAs, a legal question of contract interpretation, rather than to whether or not Atlantic disguised payments for covered work. As to that question, the parties have presented conflicting evidence that employees received payments for sick days labeled as extra pay, Def.'s 56.1 ¶¶ 72, 84; Pl.'s 56.1 Resp. ¶ 112, and there remains a question of disputed fact.

The other proof defendant offers goes more directly to the factual questions at the heart of the plaintiff's claim, but still does not meet the standard for summary judgment. Def.'s Mem. 13–15;

Def.'s 56.1 ¶¶ 68, 85. In his deposition testimony, Atlantic foreman Sean Clifton stated that he often helps out in the shop by performing tasks including organizing and cleaning, and that he did not believe that he was entitled to benefits contribution for that work. Dep. Tr. of Sean Clifton 36:13–25, Def.'s Decl., Ex. U, ECF No. 33-24. Affidavits from sixteen Atlantic employees, all identical, state, *inter alia*, that they had been paid correct wages, that all required benefit fund contributions had been paid, and that the findings of the plaintiffs' audit are not correct. Def.'s 56.1 ¶ 72; *see, e.g.*, Decl. of Adrian Rivas, Def.'s Decl., Ex. H, ECF No. 33-8.[1] Both Clifton's testimony and the sworn statements provide some support for the defendant's position but do not demonstrate an absence of dispute as to material facts.

Clifton's testimony indicates that that he was paid for work such as organizing and cleaning that would not constitute covered employment. His testimony does not, however, demonstrate that *no* work was done that constituted covered work. To the contrary, in opposition to the defendant's motion, the plaintiffs point to declarations, deposition testimony, and records that indicate that employees were engaged in tiling work that was paid out as extra pay. Pl.'s 56.1 Resp. ¶ 110; *see, e.g.*, Dep. Tr. of Nicholas D'Albo 10:3–4, 108:16–20, Def.'s Decl., Ex. DD, ECF No. 33-30 (vice president of Atlantic stating that employees were paid for installing tile at Atlantic offices via "their expenses or extra pay"); Dep. Tr. of Charles DiMeglio 5:2, 52:2–8, 53:8–16, Decl. of John Harras in Opp'n to Summ. J., Ex. 5, ECF No. 38-2 (Atlantic superintendent stating that employees were paid for installing tile at D'Albo's house under the payroll heading "expense" without recording the number of hours

---

[1] Plaintiffs urge me to discount these declarations as coercive. Pl.'s Mem. in Opp'n Mot. for Summ. J. 9–10 ("Pl.'s Mem."), ECF No. 43. The cases they cite in support concern class certification in FLSA claims, a different procedural posture and pleading standard than that presented here, and are thus inapposite. "[A]t the summary judgment stage, the district court is not permitted to make credibility determinations or weigh the evidence . . . ." *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021)). I thus look to the declarations here in the context of the broader spread of evidence only to determine whether the defendant has met its burden for summary judgment.

worked); Decl. of Joseph Regalbuto ¶¶ 12–14, ECF No. 41 (Atlantic foreman stating that he installed tile after his shifts and on weekends on commercial projects and at owners' residences for which he would be paid in a separate check).

Atlantic seeks to carve out all payments made under the umbrella of extra pay as exempt from any fringe benefit payment requirements. The plaintiffs argue that at least some of those payments were for tiling work that constitutes covered employment. Beyond a blanket denial of liability, the defendant fails to demonstrate that *none* of the extra pay was to compensate employees for tiling labor covered under the CBAs. A reasonable jury could find in the plaintiffs' flavor on this issue and thus the defendant has not carried its burden.

**B. The Funds' Claims Are Not Barred by the Statute of Limitations.**

Atlantic argues that because this action was commenced on September 23, 2020, any contributions due for time period prior to September 23, 2014, are barred by the six-year statute of limitations. The plaintiffs contend that the federal "discovery rule" applies and thus the statute of limitations accrues from when the funds knew or had reason to know that the defendant was delinquent. I agree with the plaintiffs that their claims are not time barred.

As the parties agree, ERISA does not provide a statute of limitation for delinquent contributions actions pursuant to 29 U.S.C. § 1132. Instead, courts "must apply the limitations period of the state-law cause of action that is most analogous to the [ERISA] claim" at issue. *Sandberg v. KPMG Peat Marwick, L.L.P.*, 111 F.3d 331, 333 (2d Cir. 1997); *Board of Regents v. Tomanio*, 446 U.S. 478, 483–84 (1980). The Second Circuit has held that the appropriate statute of limitations under analogous New York law is the six-year limitations period applied to claims for breach of contract set by Section 213 of the New York Civil Practice Law and Rules. *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 55 (2d Cir.2009) (citation omitted). "Under federal common law, courts generally apply the 'discovery rule' to determine when an ERISA cause of action accrues, looking to when the plaintiff 'discovers,

or with due diligence should have discovered, the injury that is the basis of the litigation.'" *Bilello v. JPMorgan Chase Ret. Plan*, 607 F.Supp.2d 586, 592 (S.D.N.Y. 2009) (citing *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007)).

Because it has raised the statute of limitations as an affirmative defense, defendant bears the burden of establishing by prima facie proof that the funds knew or should have known about the injuries that form the basis of their claims on or before September 23, 2014. *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995). Defendant has presented no such proof. The plaintiffs maintain that they had no reason to know of the injuries that form the basis of their claims prior to requesting Atlantic's books for auditing in December 2017. Pl.'s Mem. 11. Defendants offer no argument to the contrary and fail to even reply to the plaintiffs' arguments on this point.

Per the terms of the fringe benefit policies contained in the relevant CBAs, the funds were entitled to make periodic review of employers' records to confirm that contributions owed had in fact been paid. Tile Funds' Agreement, Article IX, Section III(H), Def.'s Decl., Ex. E, ECF No. 33-5; Marble Funds' Agreement, Article XXI, Section (f), Def.'s Decl., Ex. F, ECF No. 33-6. The funds initiated such an audit of Atlantic's records per the terms of the CBAs in December 2017. Pl.'s 56.1 Resp. ¶ 111. Atlantic failed to respond to both the plaintiffs' records requests and the estimated audit, further delaying the plaintiffs' ability to ascertain the extent of Atlantic's delinquent contributions. *Id.* Defendant has neither met its burden of proving as a matter of law that the limitations period expired, nor presented any affirmative evidence showing the absence of a triable issue of fact regarding the plaintiff's knowledge of the injury going to the validity of their statute of limitations defense. Thus, the defendant's motion for partial summary judgment on this issue is denied.

## CONCLUSION

For the foregoing reasons, I deny defendant's motion for partial summary judgment as to both whether payments Atlantic made as extra pay were exempt from fund contribution requirements and on the statute of limitations affirmative defense.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:       March 24, 2023
             Brooklyn, New York